UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DESIREE L. HOUSE,<br><br>                     Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>                     Defendant. | NO:  13-CV-0408-TOR<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY<br>JUDGMENT |

        BEFORE THE COURT are the parties' cross-motions for summary

judgment (ECF Nos. 16, 17).  Dana C. Madsen represents Plaintiff.  Sarah L.

Martin represents Defendant.  The Court has reviewed the administrative record

and the parties' completed briefing and is fully informed.  For the reasons

discussed below, the Court grants Defendant's motion and denies Plaintiff's

motion.

//

//

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under §405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.*, at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2

court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in

"substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). If the analysis proceeds to step five, the burden shifts to the Commissioner to

1   establish that (1) the claimant is capable of performing other work; and (2) such

2   work "exists in significant numbers in the national economy."  20 C.F.R.

3   § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

**ALJ'S FINDINGS**

5   Plaintiff Desiree House applied for supplemental security income on April

6   24, 2009.  Tr. 97-100.  Her application was denied initially and upon

7   reconsideration, Tr. 66-69, 73-74, and Plaintiff requested a hearing, Tr. 76.

8   Plaintiff appeared before an administrative law judge ("ALJ") on May 18, 2010.

9   Tr. 23-63.  On June 10, 2010, the ALJ issued a decision, finding that Plaintiff was

10  not disabled.  Tr. 10-22.  The Appeals Council denied Plaintiff's request for review

11  on July 27, 2011.  Tr. 1-6.

12  On September 6, 2011, Plaintiff appealed the ALJ's final decision to the

13  U.S. District Court of the Eastern District of Washington.  Tr. 581-86.  The parties

14  filed a stipulated motion for remand, Tr. 591-94, which the court granted, Tr. 588-

15  90.  As a result, the ALJ's decision was reversed and the case remanded for

16  additional proceedings pursuant to sentence four of 42 U.S.C. § 405(g).  Tr. 587-

17  90.

18  On remand, Plaintiff appeared before an ALJ on September 26, 2012, and

19  then again on January 25, 2013.  Tr. 529-47, 548-80.  On February 14, 2013, the

20  ALJ again issued a decision finding Plaintiff was not disabled.  Tr. 500-28.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 24, 2009, the application date. Tr. 506. At step two, the ALJ found that Plaintiff had the following severe impairments: "grade 2 spondylosis at L5-S1 status post fusion; pars defect at L5; obesity; status post right knee fracture; asthma; borderline intellectual functioning; dysthymia, not otherwise specified; anxiety disorder, not otherwise specified; and personality disorder, not otherwise specified." Tr. 506. At step three, the ALJ found that Plaintiff's severe impairments did not meet or medically equal a listed impairment. Tr. 506-09. The ALJ then determined that Plaintiff had the RFC

> to perform sedentary work as defined in 20 CFR 416.967(a). The claimant is able to occasionally lift/carry up to 20 pounds and frequently up to 10 pounds. She is able to stand/walk up to six hours in an eight-hour workday with normal breaks and she is able to sit for six hours in an eight-hour workday with normal breaks. She is able to occasionally climb stairs and ramps and never climb ladders, ropes, and scaffolds. She can occasionally stoop, kneel, crouch, and crawl. She should avoid concentrated exposure to fume, odors, dusts, gases, and poor ventilation. The claimant has the ability to listen, understand, remember, and follow simple instructions. She is likely to have difficulty with complex, multi-step tasks. She is likely to do best if she does not have to interact closely with supervisors and coworkers. She has good persistence and pace and she would be able to remain on task. The claimant has physical and mental symptomatology, including mild to moderate occasional to frequent pain, and she takes medication for the symptomatology. However, despite the level of pain and/or the effects of the medication, the claimant would be able to remain reasonably attentive and responsive in the work setting in order to carry out normal work assignments.

Tr. 509.  At step four, the ALJ found that Plaintiff did not have any past relevant work.  Tr. 520.  At step five, after considering the Plaintiff's age, education, work experience, and RFC, the ALJ found Plaintiff could perform other work existing in significant numbers in the national economy, such as housekeeping cleaner, cannery worker, production assembler, bench hand, and sewing machine operator. Tr. 521.  Thus, the ALJ concluded that Plaintiff was not disabled and denied her claim on that basis.  Tr. 522.

The Appeals Council denied Plaintiff's request for review on October 10, 2013, Tr. 453-56, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  42 U.S.C. § 405(g); 20 C.F.R. § 404.981.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income under Title XVI of the Social Security Act.  This Court has identified three issues for its review:

1. Whether the ALJ erred in making an adverse credibility determination;

2. Whether the ALJ properly weighed the medical opinions of Dr. Dennis R. Pollack and Dr. Anthony Francis; and

3. Whether the ALJ failed to pose a legally sufficient hypothetical question to the vocational expert.

ECF No. 16 at 12-18.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8

**DISCUSSION**

**A. Adverse Credibility Determination**

In social security proceedings, a claimant must prove the existence of physical or mental impairment with "medical evidence consisting of signs, symptoms, and laboratory findings." 20 C.F.R. §§ 416.908, 416.927. A claimant's statements about his or her symptoms alone will not suffice. 20 C.F.R. §§ 416.908, 416.927. Once an impairment has been proven to exist, an ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). As long as the impairment "could reasonably be expected to produce [the] symptoms," the claimant may offer a subjective evaluation as to the severity of the impairment. *Id.* This rule recognizes that the severity of a claimant's symptoms "cannot be objectively verified or measured." *Id.* at 347 (quotation and citation omitted).

In order to find Plaintiff's testimony unreliable, the ALJ is required to make "a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). An ALJ must perform a two-step analysis when deciding whether to accept a claimant's subjective symptom testimony. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). The

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9

first step is a threshold test from *Cotton v. Bowen* requiring the claimant to

"produce medical evidence of an underlying impairment which is reasonably likely

to be the cause of the alleged pain."  799 F.2d 1403, 1407 (9th Cir. 1986); *see also*

*Bunnell*, 947 F.2d at 343.  "Once a claimant meets the *Cotton* test and there is no

affirmative evidence suggesting she is malingering, the ALJ may reject the

claimant's testimony regarding the severity of her symptoms only if [the ALJ]

makes specific findings stating clear and convincing reasons for doing so."

*Smolen*, 80 F.3d at 1283-84 (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.

1993)).  In weighing the claimant's credibility, the ALJ may consider many

factors, including "'(1) ordinary techniques of credibility evaluation, such as the

claimant's reputation for lying, prior inconsistent statements concerning the

symptoms, and other testimony by the claimant that appears less than candid; (2)

unexplained or inadequately explained failure to seek treatment or to follow a

prescribed course of treatment; and (3) the claimant's daily activities.'"

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen*, 80

F.3d at 1284).  If the ALJ's finding is supported by substantial evidence, the court

may not engage in second-guessing.  *Id*.  "Contradiction with the medical record is

a sufficient basis for rejecting the claimant's subjective testimony."  *Carmickle v.*

*Comm'r, Soc. Sec. Admin*., 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v.*

*Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995).

Here, Plaintiff contends the ALJ improperly discounted her credibility, citing each reason proffered by the ALJ as insufficient.  ECF No. 16 at 12-15.  In response, Defendant asserts the ALJ offered several reasons, supported by substantial evidence, for finding Plaintiff's allegations not credible.  ECF No. 17 at 5.

This Court finds the ALJ provided the following specific, clear, and convincing reasoning supported by substantial evidence for finding Plaintiff's subjective statements not "entirely credible": (1) Plaintiff failed to comply with recommended treatment; and (2) Plaintiff made several inconsistent statements throughout the record.  Tr. 511-17.

First, the ALJ found that Plaintiff's statements concerning the severity of her limitations were inconsistent with her failure to fully comply with recommended treatment.  Tr. 511.  For instance, the ALJ noted the following regarding Plaintiff's treatment:

> [Plaintiff] did develop some bursitis; yet, she had sporadic treatment for this condition and has not had treatment for bursitis since January 2010, with a normal examination of the hip in April 2010.  The claimant fractured her right knee but the evidence shows she has received infrequent conservative treatment for her right knee since the initial injury.  The claimant has asthma; yet, the claimant's random treatment from general practitioners has left her asthma uncontrolled. In general, the record shows the claimant has a history of not following up with recommended treatment, including physical therapy, follow up appointments, and specialty referrals . . . She gets medication management through her primary care providers; yet, she sees her primary care providers randomly.

Tr. 511.  These inconsistencies between Plaintiff's alleged limitations and her
failure to comply with recommended treatment provided a permissible and
legitimate reason for discounting Plaintiff's credibility.  *Tommasetti*, 533 F.3d at
1039 (finding that a plaintiff's "unexplained or inadequately explained failure to
seek treatment or to follow a prescribed course of treatment" provided legitimate
reason for rejecting claimant's credibility) (citation omitted).

Second, the ALJ found several inconsistencies throughout the record in
Plaintiff's statements.  Tr. 516-17.  At the hearing, Plaintiff testified to the
following: she is only able to walk two blocks; when she needs to stand in line, she
finds a place where she can alternate between sitting and standing because she can
only stand for ten to fifteen minutes; she never does housework and depends on her
children to help her; and she does not do a lot of cooking.  Tr. 510-11.  However,
in her function report, Plaintiff admitted "she could prepare complete meals but her
son helps her; she kept a clean house; one mode of transportation was walking; and
she grocery shopped in stores for two to three hours at a time."  Tr. 516, 106-13.
Further, in statements to medical professionals, Plaintiff stated that she was
responsible for the care of her children; visited with friends or family daily; and
did household chores, such as washing dishes, making beds, and washing clothes.
Tr. 516-17, 414, 710.  These inconsistencies between Plaintiff's statements

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

1    provided a permissible and legitimate reason for discounting Plaintiff's credibility.

2    *Thomas*, 278 F.3d at 958.

3        Accordingly, because the ALJ provided specific, clear, and convincing

4    reasons based on substantial evidence for discounting Plaintiff's credibility, this

5    Court does not find error.

6        **B. Opinion Evidence**

7        There are three types of physicians: "(1) those who treat the claimant

8    (treating physicians); (2) those who examine but do not treat the claimant

9    (examining physicians); and (3) those who neither examine nor treat the claimant

10   [but who review the claimant's file] (nonexamining [or reviewing] physicians)."

11   *Holohan*, 246 F.3d at 1201-02 (citations omitted).  "Generally, a treating

12   physician's opinion carries more weight than an examining physician's, and an

13   examining physician's opinion carries more weight than a reviewing physician's."

14   *Id.* at 1202.  "In addition, the regulations give more weight to opinions that are

15   explained than to those that are not . . . and to the opinions of specialists

16   concerning matters relating to their specialty over that of nonspecialists."  *Id.*

17   (citations omitted).  A physician's opinion may be entitled to little, if any, weight

18   when it is an opinion on a matter not related to her or his area of specialization.  *Id.*

19   at 1203 n.2 (citation omitted).

20

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13

A treating physician's opinions are generally entitled to substantial weight in social security proceedings. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228 (quotation and citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). An ALJ may also reject a treating physician's retrospective opinion which is merely based on a review of Plaintiff's historical records, rather than on the treating physician's contemporaneous evaluation. *Magallanes v. Bowen*, 881 F.2d 747, 754 (9th Cir. 1989).

1. Dr. Dennis Pollack

Here, Plaintiff contends the ALJ erred by improperly rejecting the opinion of Dr. Pollack, an examining psychologist. ECF No. 16 at 15-17. Specifically, Plaintiff points to Dr. Pollack's July 2010 evaluation in which he concluded

1  Plaintiff suffered from numerous work-related limitations and mental retardation.

2  *Id.* at 15; Tr. 411-20.

3      This Court finds the ALJ properly assigned Dr. Pollack's opinion "little

4  weight." Because Dr. Pollack's opinion was contradicted, *see* Tr. 518 (noting the

5  contradictory diagnoses of Joyce Everhart, Ph.D.), the ALJ need only have given

6  specific and legitimate reasoning supported by substantial evidence to reject it.

7  *Bayliss*, 427 F.3d at 1216.

8      First, the ALJ noted the inconsistencies between Dr. Pollack's opinion and

9  his test results. The ALJ excerpted the following from Dr. Pollack's own

10  assessment regarding the unreliability of his testing:

11      Her intelligence test scores appear to understate her intelligence as the
        intelligence required for work that she has performed is greater than
12      shown on the intelligence testing. Her scores could be the result of
        poor effort as she gave up readily on many tasks and no amount of
13      encouragement resulted in additional effort. In addition, she was able
        to complete the complex intake form and the personality tests
14      successfully. Her spelling was good and her written answers lucid.
        Finally, she was able to perform on five digit span items forward but
15      was able to perform six backward. This is very unusual.

16  Tr. 519; *see* Tr. 416. Because the ALJ need not accept a medical opinion

17  that is "inadequately supported by clinical findings," *Bray*, 554 F.3d at 1228,

18  the ALJ provided a specific and legitimate reason for rejecting Dr. Pollack's

19  opinion. Further, the ALJ may reject a medical opinion based on tests, such

20

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15

as Dr. Pollack's, which outcome is within the Plaintiff's control.

*Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

Second, the ALJ found that Dr. Pollack's opinion was inconsistent with other medical evidence in the record. For instance, Dr. Everhart's June 2012 testing supported a diagnosis of borderline intellectual functioning, not mental retardation as Dr. Pollack had opined. Tr. 535-36, 712. Further, although Dr. Pollack opined Plaintiff would have marked limitations in areas of sustained concentration and persistence, Tr. 418, Dr. Everhart concluded that although Plaintiff would have some difficulty with executive functioning and maintaining attention, she could listen, understand, and remember simple directions. Tr. 519-20, 713. Because contrary opinions provide a specific and legitimate reason for rejecting a medical opinion, *see Tonapetyan*, 242 F.3d at 1149, the ALJ did not err in only affording Dr. Pollack's opinion little weight.

Plaintiff contends the ALJ's rejection of Dr. Pollack's opinion was influenced by impermissible bias. ECF No. 16 at 16-17. In support of this assertion, Plaintiff states that because the ALJ gave Dr. Margaret Moore's opinion "significant weight," an opinion which contains "sweeping statements" about the accuracy of Dr. Pollack's methods, the ALJ relied on matters outside of the record when rejecting Dr. Pollack's opinion. *Id.*

This Court finds that, even assuming the ALJ considered Dr. Moore's comments when deciding to afford Dr. Pollack's opinion "little weight," any error would be harmless.  First, the ALJ gave other specific and legitimate reasons for rejecting Dr. Pollack's opinion, apart from Dr. Moore's comments.  Second, Plaintiff fails to explain how this information affected the ALJ's ultimate determination.  This Court will decline to reverse an ALJ's decision on account of harmless error, which is defined as an error that is "inconsequential to the [ALJ's] ultimate nondisability determination." *Molina*, 674 F.3d at 1111, 1115.  The ALJ agreed that, based on the evidence in the record, Plaintiff would have some cognitive limitations and difficulties with social functioning; however, not to the extent opined by Dr. Pollack and unsupported by the record.  Tr. 519-20.  In recognition of Plaintiff's limitations, the ALJ included the following in the RFC finding:

> The claimant has the ability to listen, understand, remember, and follow simple instructions.  She is likely to have difficulty with complex, multi-step tasks.  She is likely to do best if she does not have to interact closely with supervisors and coworkers. She has good persistence and pace and she would be able to remain on task.

Tr. 509.  Therefore, Plaintiff has failed to explain how Dr. Pollack's diagnosis, if given greater weight, would have changed the ALJ's ultimate nondisability findings.

//

2.  Dr. Francis

Here, Plaintiff contends the ALJ erred by improperly rejecting the opinion of Dr. Anthony Francis, the testifying medical expert at Plaintiff's May 2010 hearing. ECF No. 16 at 17.  Specifically, Plaintiff points to Dr. Francis' May 2010 statements, in which he concluded Plaintiff suffered from radiculopathy prior to surgery. *Id.*; Tr. 33-34, 517.

This Court finds the ALJ properly assigned Dr. Francis' opinion only "some weight."  Because Dr. Francis' opinion is that of a non-examining physician, the ALJ need only reference specific evidence in the medical record to reject it.  *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).  Regarding Dr. Francis' opinion that Plaintiff suffered from radiculopathy, the ALJ first noted there was no objective medical evidence in the record to support such a finding.  Tr. 517. Second, the ALJ noted the only evidence supporting such a diagnosis was Plaintiff's subjective complaints of pain radiating into her lower extremities. Tr. 517.  As discussed above, the ALJ offered sufficient justification for rejecting Plaintiff's credibility.   Because the ALJ need not accept a medical opinion based on a claimant's non-credible self-reporting, *Tomasetti,* 533 F.3d at 1041, the ALJ properly rejected this diagnosis.

This Court finds that, even assuming the ALJ impermissibly rejected Dr. Francis' opinion, any error would be harmless.  Plaintiff fails to explain how this

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 18

1   information would have affected the ALJ's ultimate determination.  This Court

2   will decline to reverse an ALJ's decision on account of harmless error, which is

3   defined as an error that is "inconsequential to the [ALJ's] ultimate nondisability

4   determination."  *Molina*, 674 F.3d at 1111, 1115.  The ALJ, when questioning the

5   vocational expert, asked whether Plaintiff would be able to perform jobs existing in

6   the national economy if limited to sedentary work, as opined by Dr. Francis.  Tr.

7   517,  555-56.  In response, the vocational expert testified that someone with

8   Plaintiff's characteristics limited to sedentary work would still be able to perform

9   the jobs of bench hand and sewing machine operator.  Tr. 555-56.  Therefore,

10  Plaintiff has failed to explain how Dr. Francis' opinion, if given greater weight,

11  would have changed the ALJ's ultimate nondisability findings.

12      Accordingly, the ALJ did not err in rejecting Dr. Francis' opinion.

13  **C. Hypothetical Question Posed to Vocational Expert**

14      "Hypothetical questions posed to the vocational expert must set out *all* the

15  limitations and restrictions of the particular claimant . . . ." *Embrey v. Bowen*, 849

16  F.2d 418, 422 (9th Cir. 1988).  "Unless the record indicates that the ALJ had

17  specific and legitimate reasons for disbelieving a claimant's testimony as to

18  subjective limitations such as pain, those limitations must be included in the

19  hypothetical in order for the vocational expert's testimony to have any evidentiary

20  value." *Id.* at 423.  "If the assumptions in the hypothetical are not supported by the

1    record, the opinion of the vocational expert that claimant has a residual working

2    capacity has no evidentiary value." *Gallant v. Heckler,* 753 F.2d 1450, 1456 (9th

3    Cir. 1984).

4         Plaintiff contends the ALJ's hypothetical question posed to the vocational

5    expert did not adequately express the full extent of her limitations.  ECF No. 16 at

6    17-18.  Specifically, Plaintiff contends that the hypothetical should have described

7    a person limited to sedentary work, as opined by Dr. Francis, and with Plaintiff's

8    mental limitations, as opined by Dr. Moore.  *Id.* at 17-18.  If it had, according to

9    Plaintiff, she would have been deemed unable to work.  *Id.* at 18.

10         The Court finds the hypothetical question posed by the ALJ was legally

11   sufficient.  Plaintiff's argument is derivative of her arguments concerning the

12   ALJ's rejection of Dr. Francis' opinion.  Given that the ALJ properly rejected Dr.

13   Francis' opinion, as discussed above, no error has been shown.  Even assuming it

14   was error not to include Dr. Francis' opinion, any error was harmless as the

15   vocational expert testified that someone with Plaintiff's characteristics limited to

16   sedentary work would still be able to perform the jobs of bench hand and sewing

17   machine operator.  Tr. 555-56; *see Molina*, 674 F.3d at 1115.  Thus, the ALJ's

18   ultimate nondisability determination would not have been disturbed.  Further, the

19   ALJ afforded "significant weight" to Dr. Moore's opinion and ultimately

20   incorporated Dr. Moore's conclusions about Plaintiff's mental limitations, to the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 20

extent supported by the record, in the RFC finding . *See* Tr. 509, 518-19.

Therefore, given that the hypothetical question included the extent of Plaintiff's

impairments supported by the record, no error has been shown.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

    1.  Plaintiff's Motion for Summary Judgment (ECF No. 16) is **DENIED**.

    2.  Defendant's Motion for Summary Judgment (ECF No. 17) is

       **GRANTED**.

    The District Court Executive is hereby directed to file this Order, enter

**JUDGMENT** for Defendant, provide copies to counsel, and **CLOSE** the file.

    **DATED** December 10, 2014.

THOMAS O. RICE
United States District Judge